**Marie S. CARLIN, Plaintiff,**

v.

**TRUSTEES OF BOSTON UNIVERSITY, et al., Defendants.**

**Civ. A. No. 93–11666–EFH.**

United States District Court, D. Massachusetts.

Dec. 15, 1995.

Jane K. Alper, Disability Law Center, Boston, MA, Sue Ann Shay, The Communities Law Center, Hartford, CT, for Plaintiff.

Michael B. Rosen, Office of the General Counsel, Boston University, Boston, MA, Robert B. Smith, Office of General Counsel, Boston, MA, Alan D. Rose, Rose & Associates, Boston, MA, for Defendants.

### *MEMORANDUM AND ORDER*

HARRINGTON, District Judge.

This matter is before the Court on the Defendants' Motion for Summary Judgment. The defendants in this case are the Trustees of Boston University, Merle Jordan, as he is Director of the Pastoral Psychology

Program at Boston University, and Christopher T. Baldwin, as he is Associate Dean of the Graduate School at Boston University. The plaintiff is Marie Carlin, a former pastoral psychology Ph.D. student at Boston University. Ms. Carlin alleges that she was terminated from this program solely because of her mental disability, which constituted a violation of Section 504 of the Rehabilitation Act of 1973. The defendants' claim that Ms. Carlin's alleged disability played no role in the decision to discharge Ms. Carlin from the program. For the reasons set forth below, the Court hereby denies the Defendants' Motion for Summary Judgment.

Ms. Carlin enrolled as a candidate in Boston University's Pastoral Psychology Ph.D. program in September of 1987. The Program contains academic, research and clinical components. With regard to the clinical aspect, the Program requires the candidates to complete two years of work in a supervised clinical area. After completing one year in the general program, Ms. Carlin was awarded a fellowship from Boston University to attend Danielsen Institute for Pastoral Counseling. The Danielsen Institute is a mental health clinic and pastoral counseling center. Enrollment in the Danielsen Institute fulfills the intensive two year clinical training that is a requirement of the Ph.D. program. Ms. Carlin was enrolled at the Danielsen during the academic year of 1988–89 and received a certificate in May of 1989 stating that she had successfully completed one year of her fellowship training at the Danielsen.

Throughout her time at Boston University and the Danielsen, Ms. Carlin experienced symptoms of depression. Her mental condition became increasingly worse, and in the Spring of 1989, she requested and was granted a one year leave of absence. In April, 1990, Ms. Carlin was admitted to a psychiatric hospital in Hartford, Connecticut, where she underwent treatment until her discharge in February, 1991. Ms. Carlin's leave of absence from Boston University was extended for the 1990–91 academic year. In June, 1991, Ms. Carlin wrote to her academic advisor at Boston University, Professor Jordan, regarding her return to the pastoral psychol-

ogy program. She sent copies of this letter to both the Dean at Boston University and the Director at the Danielsen Institute. Ms. Carlin received a letter from Professor Jordan dated August 16, 1991, informing her that the Pastoral Psychology faculty had decided not to readmit Ms. Carlin to the program. In a letter from the Dean dated October 18, 1991, Ms. Carlin was further informed that the Committee on Academic Standards had voted to uphold the decision to terminate her from the program.

■ The elements of a cause of action under Section 504 of the Rehabilitation Act of 1973 are as follows: (1) The plaintiff qualified as a "handicapped person" under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his or her handicap; and (4) The relevant program or activity is receiving federal financial assistance. *See Pushkin v. Regents of the University of Colorado,* 658 F.2d 1372, 1384 (10th Cir.1981).

■ In the present case, the element in issue is whether Ms. Carlin was denied readmission in the Pastoral Psychology Program solely by reason of her disability. When making a decision based on whether an individual was qualified for readmission to a program, the Court adopts the same standard of review that is applied when a handicapped individual is "otherwise qualified" and an institution is attempting to "reasonably accommodate" the disability. In those cases, the Court defers to the institution's decision if there is evidence that the University made a "professional, academic judgment that [a] reasonable accommodation [was] simply not available." *Wynne v. Tufts University School of Medicine,* 932 F.2d 19, 27–28 (1st Cir.1991). If the institution can fulfill this standard, the burden then shifts to the plaintiff to show that "facts were genuinely disputed or [that] there [is] significantly probative evidence of bad faith or pretext." *Wynne,* 932 F.2d at 26. If the plaintiff is unable to show this, further fact finding is not necessary and the institution's decision will be respected and upheld.

The defendants have set forth the following reasons as the basis for Ms. Carlin's denial of readmission. Professor Jordan, Ms. Carlin's academic supervisor, concluded that Ms. Carlin had not shown any indication that she possessed either the capacity for in-depth psychodynamic work or that she was able to practice in the field of psychodynamically oriented pastoral psychology. Mr. Jordan did, however, suggest that Ms. Carlin pursue a career in an area that did not require a psychodynamic orientation, and he offered her the option to transfer into the more traditional program of Psychology of Religion. Professor Jordan based his conclusions and ultimate decision not only on his own first-hand observations, but also on other supervisors' and colleagues' observations and conversations that Mr. Jordan had with Ms. Carlin concerning her meetings with patients. The defendants assert that their conclusions and decision, therefore, is based on the academic determinations of the faculty and staff. In essence, the defendants concluded that plaintiff was not "otherwise qualified." Accordingly, the Court "should show great respect for the faculty's professional judgment." *Wynne,* 932 F.2d at 25. This, however, does not end the analysis. As stated earlier, when the defendants are able to show that they based their decision on purely academic reasons, the burden shifts to the plaintiff to show that these reasons are genuinely in dispute or that there is "significantly probative evidence of bad faith or pretext." The plaintiff has put forth the following evidence that the defendants' alleged reasons for denying readmission amount to pretext:

(1) the lack of any documentation of plaintiff's alleged lack of aptitude until 16 months after she took an approved leave of absence from Boston University and entered a psychiatric hospital;

(2) the letter from her clinical supervisor, Dr. John Maes stating that plaintiff demonstrated good skills as a therapist during her year at the Danielsen Institute and "made significant progress" toward her goal of learning to be "an individual therapist working with long term cases";

(3) the fact that plaintiff received a certificate stating that she "successfully completed" her year at the Danielsen Institute;

(4) the fact that defendant did not terminate plaintiff from the program at the end of her second year but instead allowed her to take a leave of absence from the University which it then extended;

(5) the fact that plaintiff was not informed in writing that the University faculty considered her unqualified to reenter the program until she notified University staff that she had been admitted to a psychiatric hospital;

(6) the fact that in plaintiff's case the defendant departed from its normal practice of doing everything in its power to assist students to remain in the program rather than routinely terminating students who had difficulty meeting the program's requirements;

(7) the fact that defendant made its judgment of plaintiff's alleged lack of aptitude at a time when they knew her to be suffering from severe depression.

(8) Merle Jordan's statement in his letter to Sister Sheila Carney explaining the reasons for plaintiff's termination from the program that her history of "serious mental health problems" while she was at Boston University did not provide "the kind of environment that is conducive to a return to Boston" for the plaintiff.

After reviewing the evidence, this Court concludes that the plaintiff has shown significantly probative evidence of pretext. The evidence set forth above suggests that the reason articulated by defendants for terminating plaintiff was untrue and that the defendants were in fact motivated by plaintiff's mental illness and not her lack of aptitude in its decision to terminate her from the program. Boston University has absolute authority to render an academic judgment, but that decision must be a genuine one. For this reason, the Court hereby denies the Defendants' Motion for Summary Judgment.

SO ORDERED.